**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CONMACO/RECTOR L.P.**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO: 12-2337**

**L&A CONTRACTING COMPANY**                                **SECTION: "H"(4)**

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion for Summary Judgment Regarding Counterclaims (R. Doc. 24), and a Motion for Summary Judgment Regarding Damages (R. Doc. 49).  For the following reasons, the former is GRANTED IN PART and the latter DENIED.

**BACKGROUND**

This is a civil action arising out of a lease agreement between Conmaco/Rector, L.P. ("Conmaco") and L&A Contracting Company ("L&A").  Pursuant to this agreement, Conmaco agreed to lease a hydraulic hammer and certain component parts (collectively the "Hammer") to L&A. L&A

1

intended to use the Hammer to install large piles in connection with a flood control project on the Houma Navigation Canal.

On December 20, 2011, Conmaco delivered the Hammer to the L&A jobsite. During the week of January 2, 2012, L&A used the Hammer to drive a number of test piles. On January 9, 2012, the Hammer malfunctioned due to the failure of a component part. Conmaco subsequently ordered a replacement part from the manufacturer. The Hammer was inoperable from the date of failure until February 27, 2012—the day it was returned to L&A in working condition.

Conmaco subsequently submitted separate invoices for the period during which the Hammer was non-functional, for labor charges related to the disassembly of the Hammer, and for damage to the Hammer discovered during a post-rent inspection. L&A refused to pay the invoices, after which Conmaco brought the instant suit. L&A counterclaimed for breach of lease, breach of warranty against vices or defects, and unjust enrichment. Each counterclaim is based on damages allegedly suffered as a result of the defect in the Hammer.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2012). A genuine issue of fact exists only "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted). "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise

3

properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Conmaco moves this Court for the entry of summary judgment as to L&A's counterclaims. Conmaco separately moves for summary judgment as to damages resulting from those counterclaims. The Court addresses each Motion separately.

I.   Motion for Summary Judgment as to L&A's Counterclaims

Conmaco argues that L&A has contractually waived its right to recover any damages resulting from a defect in the Hammer, and that L&A is precluded from asserting a claim for unjust enrichment. While the Court agrees that L&A's claim for unjust enrichment fails as a matter of law, there is a genuine issue of material fact as to whether L&A waived its right to recover damages for breach of the warranty against vices or defects. Accordingly, the motion is granted in part and denied and part.

A. *Whether L&A Waived its Right to Recover Damages*

In this diversity case, Louisiana substantive law applies, including its principles of contract interpretation. *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011) (citation omitted). "According to the Louisiana Civil Code, '[i]nterpretation of a contract is the determination of the common intent of the parties.'" *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting La. Civ. Code art. 2045). In probing this intent, a

4

court looks first to the four corners of the contract.  *See John Paul Saprir, LLC v. Yum! Brands, Inc.*, 106 So. 3d 646, 652 (La. Ct. App. 4th Cir. 2012) (citation omitted).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  "Each provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective."  *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La. 1995) (citations omitted).

The determination of whether a contract is clear or ambiguous is a question of law.  *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) (citation omitted).  "When a contract can be interpreted from the four corners of the instrument, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate."  *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95–3317(A)*, 837 So. 2d 11, 24 (La. Ct. App. 1st Cir. 2002) (citation omitted).  If, on the other hand, the court makes a threshold finding that the contract is ambiguous, an issue of material fact exists as to the intention of the parties, and summary judgment is rarely appropriate.  *See Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 118 So. 3d 1203, 1212 (La. Ct. App. 4th Cir. 2013) (citation omitted).

The waiver provisions in the equipment lease provide as follows:

> 3.     LESSOR HAS MADE NO REPRESENTATION OF WARRANTY OF ANY KIND, NATURE, OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, INCLUDING, WITHOUT

LIMITATION, THE CONDITION OF THE EQUIPMENT, ITS MERCHANTIBILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; EXCEPT THAT LESSOR WARRANTS THAT IT WILL HAVE TITLE TO THE EQUIPMENT AT THE TIME OF DELIVERY THEREOF. AS TO LESSOR, THEREFORE, LESSEE EXPRESSLY AGREES THAT IT LEASES THE EQUIPMENT "AS IS." LESSOR SHALL NOT BE LIABLE FOR ANY DAMAGES BY REASON OF FAILURE OF THE EQUIPMENT TO OPERATE OR FAULTY OPERATION OF THE EQUIPMENT OR SYSTEM. LESSOR SHALL NOT BE HELD RESPONSIBLE FOR ANY DIRECT OR CONSEQUENTIAL DAMAGES OR LOSSES RESULTING FROM THE INSTALLATION, OPERATION, OR USE OF THE EQUIPMENT. NO DEFECT OR UNFITNESS OF THE EQUIPMENT SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR OTHERWISE PERFORM UNDER THE LEASE. **LESSEE ACKNOWLEDGES THAT THE FOREGOING LIMITATIONS OF WARRANTY HAVE BEEN BROUGHT TO ITS ATTENTION BY LESSOR AND THAT IT HAS READ AND UNDERSTANDS THE SAME.**

4. THE VENDOR, METHOD OF SHIPMENT, MAKE, MODEL, SPECIFICATIONS, PERFORMANCE, AND ALL OTHER MATTERS RELATING TO THE ORDERING, DELIVERY, OPERATION, AND PERFORMANCE OF THE EQUIPMENT HAVE BEEN SELECTED AND DETERMINED BY LESSEE. LESSOR SHALL NOT BE LIABLE FOR LOSS OR DAMAGE OCCASIONED BY ANY CAUSE, CIRCUMSTANCE, OR EVENT OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO FAILURE OF OR DELAY IN DELIVERY, DELIVERY TO THE WRONG PLACE, DELIVERY OF IMPROPER EQUIPMENT OR PROPERTY OTHER THAN THE EQUIPMENT, DAMAGE TO THE EQUIPMENT, GOVERNMENTAL REGULATION, STRIKES, STORMS, WAR EMERGENCIES, LABOR TROUBLES, BELATED RECEIPT OF MATERIALS, FIRES, FLOODS, WATER, ACTS OF GOD OR OTHER CIRCUMSTANCES OF LIKE OR UNLIKE NATURE.

(R. Doc. 24-3) (emphasis in original).  L&A argues there is a genuine issue of material fact as to

whether the waiver of warranties in Paragraph 3 is enforceable.  Conmaco counters that the Court need not address whether the waiver of warranties is enforceable, because L&A has more broadly waived its right to bring a claim for *any* damages, as provided in Paragraphs 3 and 4.

The parties' arguments present multiple issues for the Court's consideration.  First, the Court must determine whether the lease agreement contains an enforceable waiver of the right to recover damages.  Next, the Court must determine whether the lease agreement contains an enforceable waiver of the warranty against vices or defects.  Should the Court answer the former in the affirmative and the latter in the negative, the Court must determine whether, as a matter of law, the parties may essentially abnegate the warranty against vices or defects by a more general waiver of the right to recover *any* damages.

> i.  *Whether the Lease Contains an Enforceable Waiver of Damages*

Under Louisiana law, parties may contract to limit or waive recoverable damages.  *See Gulf Am. Indus. v. Airco Indus. Gases*, 573 So. 2d 481, 489 (La. Ct. App. 5th Cir. 1990) (citation omitted); *Vaulting & Cash Servs., Inc. v. Diebold*, 199 F.3d 440, at *4 (5th Cir. 1999) (unpublished) (citation omitted); *Harvey v. Mosaic Fertilizer, LLC*, No. 06–9510, 2009 WL 3112144, at *5 (E.D. La. Sept. 25, 2009) (citation omitted).  A waiver of damages is generally enforceable if it is: (1) written in clear and unambiguous terms; (2) contained in the contract; and (3) brought to the attention of the parties.  *Gulf Am.*, 573 So. 2d at 489.  Even if these requirements are met, a waiver is null if it "excludes or limits the liability of one party for intentional or gross fault that causes damage to the

7

other party."  La. Civ. Code art. 2004.

Paragraph 3 of the lease agreement specifically provides that Conmaco "shall not be held liable for any direct or consequential damages or losses resulting from the installation, operation, or use of the [Hammer]."[1]  Paragraph 4 reinforces this waiver of damages: "[Conmaco] shall not be liable for loss or damage occasioned by any cause, circumstance, or event of whatsoever nature, including . . . damage to the equipment . . . or other circumstances of like or unlike nature." Because the waiver of damages in this case is clear, unambiguous, and contained in the lease agreement, the issues before the Court are two-fold: (1) whether the waiver was sufficiently brought to L&A's attention, and (2) whether L&A's damages involve intentional or gross fault by Conmaco.

Louisiana courts have not yet addressed the circumstances under which a waiver of damages is sufficiently brought to a party's attention.  The Louisiana Supreme Court has addressed this issue, however, in the context of a contractual waiver of the implied warranty of fitness.  *See generally La. Nat'l Leasing Corp. v. ADF Serv., Inc.*, 377 So. 2d 92 (La. 1979).  Because a waiver of warranties, like a waiver of recoverable damages, must be brought to the attention of the party against whom it is to be enforced, *see Gulf Am.*, 573 So. 2d at 489, the Court finds *La. Nat'l*

---

[1] One could argue that the first and last sentences of Paragraph 3 suggest that the Paragraph was only intended to address a waiver of warranties.  The Court need not address this argument because the Court finds that Paragraph 4, by itself, is sufficient to constitute a clear and unambiguous waiver of the right to recover damages.

persuasive.

*La. Nat'l* involved the commercial lease of a photocopy machine.  377 So. 2d at 94.  The following phrase was printed in block letters on the face of the lease: "THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE OF THIS PAGE ARE A PART OF THIS LEASE."  *Id.* at 95.  The reverse side of the lease contained a clear and unambiguous waiver of express and implied warranties.  *Id.* at 96.  In holding that the waiver of warranty was sufficiently brought to the lessee's attention, the court focused on a variety of factors.  First, it noted that the lease was not a "consumer transaction" but instead was between two commercial actors: "[i]t must be presumed that persons engaged in business . . . were aware of the contents of the lease agreement which they signed."  Second, the Court found that the phrase in block letters on the face of the lease "called attention to the terms and conditions on the reverse side."  *Id.*  Third, the court noted that one of the lessees who signed the lease was an attorney.  *Id.*

As in *La. Nat'l*, the equipment lease in this matter was between two commercial actors.  A co-owner of L&A who signed the lease testified that he is familiar with clauses in which the right to consequential damages is waived and that he has "probably" signed leases with similar clauses in the past. (R. Doc. 24-1.)  Moreover, whereas the waiver in *La. Nat'l* was printed on the back of the lease, the waiver clauses in the equipment lease are contained in the main body of the lease.  The waivers are underlined and written in capital letters.  Finally, L&A signed the equipment lease and initialed each page.  Given the foregoing, the Court finds that the waiver of damages was

sufficiently brought to L&A's attention. *See Ingraham v. Planet Beach Franchising Corp.*, No. 07–3555, 2009 WL 1076713, at *2 (E.D. La. Apr. 17, 2009) (finding damages waiver sufficiently brought to plaintiff's attention where plaintiff's signature appeared at bottom of page, waiver language was highlighted as separate provision, and plaintiff was a sophisticated businesswoman). L&A's failure to contest that the waiver of damages was brought to its attention underscores the strength of the Court's conclusion.

The Court next considers whether the damages suffered by L&A resulted from intentional or gross fault by Conmaco.  L&A has not alleged that Conmaco is liable for any intentional tort, nor has L&A alleged gross fault.  Louisiana courts have defined "gross fault" for purposes of article 2004 as "that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud." *Sevarg Co., Inc. v. Energy Drilling Co.*, 591 So. 2d 1278, 1281 (La. Ct. App. 3d Cir. 1991) (internal quotation marks and citation omitted); *Mobil Exploration*, 837 So. 2d at 26.  At most, L&A alleges Conmaco should have known of the defect in the Hammer.  Such garden-variety negligence claims clearly do not rise to the high level of fault contemplated by article 2004.  Accordingly, the Court finds that the waiver of damages is valid and enforceable.

### ii. *Whether the Lease Contains an Enforceable Waiver of Warranties*

The warranty against vices or defects in Louisiana Civil Code article 2696 arises by operation of law in every contract of lease. *Ford New Holland Credit Co. v. McManus*, 833 So. 2d 1130, 1133 (La. Ct. App. 2d Cir. 2002) (citations omitted).  The warranty under article 2696 is waiveable, but

only by clear and unambiguous language brought to the attention of the lessee.  La. Civ. Code art. 2699.  Even if these requirements are met, a waiver is unenforceable "to the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known."  La. Civ. Code art. 2699(1).

Paragraph 3 of the equipment lease provides in relevant part that Conmaco "has made no representation or warranty of any kind, nature, or description, express or implied, with respect to the Hammer . . . except that Conmaco warrants that it will have title."  The last sentence of Paragraph 3, which, unlike the rest of the paragraph, is written in bold letters, reads as follows: "[L&A] acknowledges that the foregoing limitations of warranty have been brought to its attention and that it has read and understands the same."

There can be little doubt that paragraph 3 contains a clear, unambiguous waiver of the warranty against vices or defects.  Moreover, it is equally clear that, for the reasons stated in the previous subsection, this waiver was sufficiently brought to L&A's attention.  In fact, the last sentence of paragraph 3 contains an acknowledgment in bold letters that L&A has read and understood the waiver.  Thus, the waiver is enforceable unless L&A was ignorant of the defect in the Hammer and Conmaco knew or should have known of the defect.  *See* La. Civ. Code art. 2699(1).

The parties do not dispute that L&A was unaware the Hammer was defective.  Rather, the dispute on summary judgment is whether Conmaco knew or should known of the defect. Louisiana courts have consistently held that the determination of subjective facts such as knowledge are

generally not ripe for summary judgment. *See Merwin v. Spears*, 90 So. 3d 1041,  1042 (La. 2012) (per curiam) ("[S]ummary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, *knowledge* or good faith.") (emphasis added) (citation omitted); *Smith v. Our Lady of the Lake Hosp., Inc.*, 639 So. 2d 730, 751 (La. 1994) (collecting cases); *La. Pigment Co., L.P. v. Scott Constr. Co, Inc.*, 945 So. 2d 980, 985 (La. Ct. App. 3d Cir. 2006) (citing *Murphy's Lease & Welding Serv. Inc. v. Bayou Concessions Salvage, Inc.*, 780 So. 2d 1284 (La. Ct. App. 3d Cir. 2001)); *Thomas v. North 40 Land Dev., Inc.*, 894 So. 2d 1160, 1173–74 (La. Ct. App. 4th Cir. 2005).  The Fifth Circuit has been similarly loathe to take away from a jury the factual determination of a party's knowledge.  *See Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994); *Brunsonn v. First Nat'l Bank of Bryan*, 405 F.2d 1193, 1194 (5th Cir. 1969).  The Court finds that L&A has identified evidence in the record sufficient to create a genuine issue for trial as to whether Conmaco knew or should have known of the defect in the Hammer.  Accordingly, the Court cannot determine at this time whether the waiver of warranty in Paragraph 3 is enforceable.

L&A also argues that the waiver is unenforceable because Conmaco delivered a defective Hammer, thereby breaching the warranty of peaceful possession under Louisiana Civil Code article 2700.[2]  In support of this argument L&A cites *Angelle v. Energy Builders Co., Inc.*, 496 So. 2d 509 (La. Ct. App. 1st Cir. 1986).  L&A's reliance on *Angelle* is misplaced.

The lessor in *Angelle* agreed to lease a tractor equipped with a special blade to be used for

---

[2] Article 2700 provides in pertinent part: "[t]he lessor warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing."

clearing swamp land.  *Id.* at 510.  The lease contained a waiver of all warranty obligations and any liability for failure to deliver the leased equipment.  *Id.*  The lessor delivered the tractor but without the special blade.  *Id.* at 511.  Nonetheless, the lessee made sporadic payments under the lease until he filed suit against the lessor for breach of contract.  *Id.*  The lessee sought a refund of the payments previously provided whereas the lessor sought damages for failure to pay outstanding amounts under the lease.[3]

The appellate court refused to enforce the waiver of warranty against the lessee.  The court emphasized that the lessee "never received a very essential part of the equipment that lessor agreed to provide" and that without the special blade, the lessee had "no need" for the tractor delivered.  *Id.* at 512.  According to the court, "[t]his failure of delivery meant that plaintiff never acquired peaceable possession of the thing leased" under article 2700.  *Id.*  The court held that the right of peaceable possession is a "fundamental obligation" that cannot be waived.  *Id.* at 512–13.

The facts in the case *sub judice* are readily distinguishable.  Unlike *Angelle*, it is undisputed that the lessee received the equipment leased and all of its component parts.  It is also undisputed that the lessee used the equipment without incident for approximately one week subsequent to delivery.[4]  Extending *Angelle* to cover situations like this would severely and unduly limit the

---

[3] Technically, the original lessor did not seek these repayments.  *Angelle*, 496 So. 2d at 511.  The original lessor assigned its rights under the lease following a bankruptcy reorganization.  *Id.*  The assignee subsequently intervened in the ongoing suit between the lessee and the original lessor.  *Id.*

[4] *See Angelle*, 496 So. 2d at 512 (distinguishing *La Nat'l* wherein the plaintiff used the thing leased without problems for approximately three months).

parties' contractual freedom to waive the warranty against vices and defects:  for a lessee could always argue that a defect in the object leased violates article 2700, thereby regaining the cause of action he previously bargained away.

iii.  *Whether the Waiver of Damages Encompasses a Waiver of Warranties*

Having determined that the waiver of damages in the equipment lease is enforceable and that the Court cannot decide on summary judgment whether the waiver of warranties is enforceable, the Court now considers whether the waiver of damages encompasses the waiver of warranties, thereby pretermitting resolution of the latter's enforceability.  In other words, the issue before the Court is whether the parties may contractually abnegate the warranty against vices or defects through a broad waiver of the right to recover *any* damages.

Louisiana courts have not yet addressed this issue.  In the absence of binding precedent, the Court's primary obligation is to make an "*Erie* guess" as to how the Louisiana Supreme Court would decide the issue presented.  *See Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012) (citation omitted).  In making this guess, the Court "attempt[s] to predict state law, not to create or modify it."  *SMI Owen Steel Co., Inc., v. Marsha USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (internal quotation marks and citation omitted).

With these principles in mind, the Court concludes that a broad contractual waiver of damages cannot, as a matter of public policy, abjure the warranty against vices or defects provided

14

in article 2696.[5]  This conclusion is warranted after comparing the circumstances under which the respective warranties will be deemed unenforceable.  As explained *supra*, a facially valid waiver of warranty is unenforceable if the lessee did not know of the vice or defect and the lessor knew or should have known of the defect.  *See* La. Civ. Code art. 2699(1).  By contrast, an otherwise proper waiver of damages is only unenforceable if it "excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." La. Civ. Code art. 2004.  Thus, a lessee seeking to invalidate a waiver of warranty need only prove his own lack of knowledge and the lessor's negligence, but to invalidate a general waiver of damages, the lessee must prove intentional or gross fault.  It would seem anomalous, then, to allow a general waiver of damages to encompass the warranty against vices or defects.  Such a result would essentially allow a general waiver of damages to swallow the implied warranty of fitness in article 2696: even if a lessee can prove that a waiver of warranty is unenforceable due to the lessor's negligence, he may still be precluded from availing himself of that warranty if he is unable to prove that the lessor acted intentionally or with gross negligence.  Indeed, this is precisely the scenario presented by the instant case.  Conversely, if a lessee can prove intentional or gross fault on the part of the lessor, then he can establish, *a fortiori*, the lessor's negligence.  In other words, a lessee who successfully

---

[5] In so holding, the Court is mindful of the general rule that "[c]ontracts have the effect of law for the parties."  La. Civ. Code art. 1983.  Thus, parties are free to modify by contract the default provisions of the Code and other statutes.  *Gen. Elec. Capital v. Southeastern Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).  "[I]mmutable matters of public policy," however, place an important limitation on this contractual freedom.  *Id*.  Parties may not contract around certain Codal provisions or statutes when doing so would be contrary to public policy.  *See id.*

avoids a general waiver of damages will necessarily avoid a waiver of warranty. Thus, there would be little (if any) reason to ever include a waiver of warranty if a contract also includes a general waiver of damages: if the waiver of damages is enforceable, the existence of a waiver of warranty would be immaterial; if the waiver of damages is unenforceable, then so too would the waiver of warranty.

The Court can find no support in Louisiana law, nor has Conmaco provided any, for the proposition that parties may avoid the warranty against vices or defects through a broad waiver of damages, thereby rendering the former superfluous. To the contrary, the Louisiana Civil Code specifically provides that lease is a nominate contract. La Civ. Code art. 1914. As such, it is subject to "special rules of [its] respective title[] when those rules modify, complement, or depart from [Title IV]." La. Civ. Code art. 1914. The special rules for lease are found in Title IX of the Louisiana Civil Code. *See generally* La. Civ Code. arts. 2668–2777. One such special rule provides the circumstances in which the warranty against vices and defects can be waived. La. Civ. Code art. 2699. This rule modifies, complements, or departs from article 2004 in Title IV (discussed *supra*), which prohibits a general waiver of damages for intentional or gross fault. *See* La. Civ. Code art. 1914. Thus, the Codal scheme suggests, if not mandates, that article 2699 provides the sole means for establishing and/or challenging a waiver of the warranty against vices or defects. Allowing parties to avoid article 2699 through article 2004 would be fundamentally discordant with this statutory scheme and the civilian taxonomy of contracts.

　　　　iv. *Conclusion*

The Court provides the following summary of its findings with respect to Subsection A. The lease agreement contains a facially valid waiver of the warranty against vices or defects. There is a genuine factual dispute, however, as to whether Conmaco knew or should have known of the defect in the hammer. Accordingly, the Court cannot determine on summary judgment whether the waiver is enforceable under Louisiana Civil Code article 2699. Should the jury find that Conmaco breached the warranty against vices or defects and that the waiver of warranty is unenforceable, L&A may recover damages caused by such breach. L&A has waived its right to recover any other damages under the lease agreement.

B. *Whether L&A May Assert a Claim for Unjust Enrichment*

L&A alleges that Conmaco has been unjustly enriched by receiving rental payments under the equipment lease despite the fact that the equipment leased was defective. L&A's claim for unjust enrichment fails as a matter of law.

Louisiana Civil Code Article 2298 provides that "the remedy of unjust enrichment is subsidiary in nature, and 'shall not be available if the law provides another remedy.'" *Walters v. Medsouth Record Mgmt., LLC.*, 38 So. 3d 245, 246 (La. 2010) (per curiam) (quoting *Carriere v. Bank of Louisiana*, 702 So. 2d 648, 671 (La. 1996)); *see also* La. Civ. Code. art. 2298. "[T]he enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee . . . and the enrichee." *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 122 (La. 1974). In other words, "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract."

*Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004) (citation omitted).

A valid contract exists between Conmaco and L&A that governs their rights and obligations with respect to the lease of the Hammer.  Thus, any alleged enrichment "finds its explanation" in the lease agreement.  That L&A has potentially bargained away its right to assert the very claims it brings before this Court is of no moment.  *See Garber v. Badon & Ranier*, 981 So. 3d 92, 100 (La. Ct. App. 3d Cir. 2008) ("[I]t is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied.") (emphasis in original).  Allowing plaintiffs to assert an unjust enrichment claim in these circumstances would essentially render meaningless any contractual waiver of the right to recover damages.

II.   <u>Motion for Summary Judgment as to Damages Resulting from L&A's Counterclaims</u>

Even if L&A has not contractually waived its right to seek damages, Conmaco claims that L&A is precluded from recovering damages for two separate reasons: (1) L&A did not put Conmaco in default, as required by Louisiana law; and (2) L&A's damages are neither reasonably foreseeable nor causally related to Conmaco's breach of the warranty against vices or defects.[6]  Because the Court finds neither argument persuasive, summary judgment is denied.

A. *Whether L&A was Required to Put Conmaco in Default*

---

[6] The Court makes no finding as to whether Conmaco breached the warranty against vices or defects.  Because the instant Motion is directed solely towards the issue of damages, the Court assumes liability *arguendo*.

An obligor need only be put in default when the obligee seeks delay (or "moratory") damages.  La. Civ. Code art. 1989.  Thus, before addressing whether L&A was required to put Conmaco in default, the Court must first determine the nature of the damages sought.

In a breach of contract action, an aggrieved party may seek compensatory damages, moratory damages, or both.  *See Moran v. Wilshire Ins. Co.*, 520 So. 2d 1173, 1176 (La. Ct. App. 3d Cir. 1998) (citation omitted); La. Civ. Code art. 1989 cmt. c.  The purpose of moratory damages is to compensate an obligee for injuries sustained as a result of an obligor's untimely performance. La. Civ. Code art. 1989 cmt. b.  Thus, "[m]oratory damages presuppose a performance actually rendered, although delayed."  *Id*; *see also* 6 Saul Litvinoff, Louisiana Civil Law Treatise: Law of Obligations § 1.13 (2d ed. 2012) ("Rather than final, or definitive, [delay] is a sort of temporary nonperformance with respect to the time element of the obligation that can be cured by the obligor through subsequent rendering of performance plus reparation of the damage that his tardiness may have caused to the obligee.") (citation omitted).  Compensatory damages, on the other hand, presuppose "total or partial nonperformance, or defective performance by the obligor." La. Civ. Code art. 1989 cmt. b.  Such damages "compensate the obligee for a performance that he will not receive, or will not receive in full." 6 Saul Litvinoff, Louisiana Civil Law Treatise: Law of Obligations § 1.14 (2d ed. 2012) (citation omitted).  In sum, whereas compensatory damages "are a substitute satisfaction granted to the obligee in lieu of a performance that has failed . . . moratory damages follow a performance that has been or will be rendered, but late." *Id.*

L&A seeks damages that allegedly accrued during the period in which the Hammer was

19

inoperable.  As discussed *supra*, L&A may only seek damages for breach of the warranty against vices or defects.[7]  Article 2696 requires the lessor to deliver the thing leased free of any vices or defects that prevent the lessee from using the thing for the purpose for which it was leased.  It is undisputed that the Hammer functioned properly and thus was free of any vices or defects on February 27, 2012—the day that Conmaco delivered the repaired Hammer.  Thus, Conmaco did not wholly or partially fail to perform its obligation under article 2696, nor was Conmaco's performance defective.[8]  Rather, L&A seeks damages due to Conmaco's alleged failure to deliver a Hammer free of vices or defects until February 27, 2012.  Thus, it is clear that Conmaco's damages are moratory.

Moratory damages are governed by special rules.  *See* La. Civ. Code arts. 1989–93.  Such damages are owed from the time the  obligor is "put in default."  La. Civ. Code art. 1989.  When a term for the performance of the obligation is fixed or clearly determinable by the circumstances, the obligor is automatically put in default by the arrival of that term.  La. Civ. Code art. 1990.  In all other circumstances, *i.e.*, when the term for performance of the obligation is unclear, the obligee must put the obligor in default.[9]  *See id.*

---

[7] Again, the Court emphasizes such damages are only recoverable if the jury finds that the warranty in article 2696 was breached, and that the right to recover any related damages was not waived.  The right to recover all other damages has been waived.

[8] A "defective" performance is one that is imperfect.  *See* 6 Saul Litvinoff, Louisiana Civil Law Treatise: Law of Obligations § 1.14 (2d ed. 2012) (citation omitted).  L&A does not allege that Conmaco's performance on February 27, 2012, was defective, because it does not argue that the Hammer was not fully functional on that date.

[9] An obligee may put the obligor in default by: (1) written request for performance; (2) oral request for performance in the presence of two witnesses; (3) filing suit for performance; or (4) complying with a specific provision in the contract.  La. Civ. Code art. 1991.

For purposes of article 1990, "[a] term for performance of an obligation is fixed when a certain date, a particular occasion, or a particular time period is set."  *Williams v. Sustainable Forestry*, 974 So. 2d 178, 180 (La. Ct. App. 2d Cir. 2008).   A term is determinable by the circumstances when, for example, "a party binds himself to deliver ten cane cars that, to his knowledge, the other party needs for harvesting of that year's sugar cane crop, a circumstance which [demonstrates] that the parties intended for the cars to be delivered no later than the time at which the harvest would commence."  6 Saul Litvinoff, Louisiana Civil Law Treatise: Law of Obligations § 1.21 (2d ed. 2012) (citation omitted).

The issue before the Court is whether the obligation to deliver a Hammer free of vices or defects has a fixed term or one that is clearly determinable by the circumstances.  Should the Court answer this question in the affirmative, L&A was not required to put Conmaco in default.  If, on the other hand, the term is unclear, then L&A cannot recover moratory damages unless it put Conmaco in default in a manner provided by article 1991.

The equipment lease between Conmaco and L&A provides that its rental terms "shall commence on the earlier of the day that the [Hammer] leaves [Conmaco's] yard for delivery to [L&A] or the rental commencement date set forth in the special terms section."  (R. Doc. 49-2 ¶2.) The "rental commencement date" is "[a]pproximately November, 2011 (Exact date TBD)." (*Id.*) The Hammer left Conmaco's yard for delivery on December 20, 2011, thereby activating the terms of

the lease, and, by necessary implication, the warranty against vices or defects.[10] Thus, Conmaco's argument that the lease "contains no . . . key date which would trigger default or delay damages" is unavailing.  (R. Doc. 49-1.)  Conmaco's obligation to deliver a Hammer free of vices or defects commenced on the day the Hammer left Conmaco's job site for delivery to L&A.   The failure to timely honor this obligation automatically put Conmaco in default.  *See* La. Civ Code art. 1990. Because the Court finds that the term for performance was clearly determinable by the circumstances, L&A was not required to put Conmaco in default.

Conmaco may argue that this holding misreads the language in article 1990.  Even if it is assumed that the warranty against vices or defects is activated once the Hammer leaves Conmaco's yard for delivery, Conmaco may argue that neither the lease nor the surrounding circumstances provides a definitive time frame for *when* this delivery might occur.  Thus, the Hammer could leave Conmaco's yard for delivery (which would activate  the terms of the lease and warranty against vices or defects) one week after the lease was signed, one month later, or one year later.  It would follow, then, that the term for performance is "not clearly determinable by the circumstances" under article 1990.  Comment b to article 1990 could be read to support this line of argument.  The comment provides that a term for performance is clearly determinable when, for example, "a wedding dress is ordered from a merchant who is advised of the date of the wedding . . . even if no date for delivery was expressly stipulated."  La. Civ. Code art. 1990 cmt. b.  In this scenario,

---

[10] As discussed *supra*, the warranty against vices or defects arises by operation of law in every contract of lease.  Thus, it stands to reason that the warranty and its attendant obligations are activated as soon as the principal obligation—the lease—becomes active.

although the parties did not agree on a date for delivery, it is clear that the dress must be delivered on (or likely before) the wedding day.  Similarly, in the cane cars example discussed *supra*, it is clear that the cane cars must be delivered some time before harvest season.  The term for performance is clearly determinable in each of these scenarios, it may be argued, because it is dependent upon a date or time-frame that is certain to pass.  By contrast, in the case *sub judice*, there is nothing in the lease or surrounding circumstances which provides that the Hammer must leave Conmaco's yard by a certain time.  Instead, delivery of the Hammer was intended to occur (and did) upon demand of L&A.  Thus, one could argue, the term for delivering a Hammer free of vices or defects was not "clearly determinable by the circumstances" at the time the lease was confected, as required by article 1990.  Rather, it is was only determinable *ex post facto*, *i.e.*, after Conmaco complied with L&A's request for delivery.  Although this *ex ante* interpretation of article 1990 is persuasive, it is ultimately unsupported by the case law.

In *Williams v. Sustainable Forestry*, four individuals agreed to sell a piece of immovable property to an LLC. 974 So. 2d at 179.  The document which memorialized this agreement provided that "[a] deposit of two-thousand and no/100ths ($2,000.00) Dollars shall be made with [a certain seller] with the signing of this agreement." *Id.* (internal quotation marks omitted).  The  sellers signed the agreement on August 2, 2005, August 9, 2005, and August 11, 2005, after which the agreement was forwarded to the buyer. *Id.*  The buyer signed the agreement on September 1, 2005. *Id.*  The buyer claimed that it mailed a $2,000 check on September 2, 2005. *Id.*  On November 2, 2005, the seller informed the buyer via facsimile that she had not received the

required deposit, that the buyer was in default, and that the sellers were voiding the contract. *Id.* Upon receipt of the fax, the buyer mailed another $2,000 check, which the seller refused to accept. *Id.* The sellers subsequently sought a judgment declaring the purchase agreement null and void. *Id.* The buyers counterclaimed for specific performance. *Id.* The parties filed cross motions for summary judgment. *Id.* The trial court granted the sellers' motion and declared the contract null and void. *Id.*

In affirming the trial court, the court of appeal noted that the words of the purchase agreement "were clear and explicit" that the deposit was to be delivered to the seller contemporaneously upon the signing of the agreement.[11] *Id.* at 180–81. Thus, even if the deposit had been delivered on September 2, it still would have been tardy because the agreement was signed on September 1. *See id.* at 181. Thus, the court concluded "that the term for the performance of an obligation, paying the $2,000 deposit, was fixed or clearly determinable by the circumstances" under article 1990. *Id.* Accordingly, the court found that the buyer was "automatically in default" and that the sellers were entitled to void the agreement. *Id.*

*Williams* counsels that the *ex ante* interpretation of article 1990 discussed *supra* is incorrect. Although the purchase agreement provided that the deposit was due upon signing, the agreement did not provide a time frame for when it had to be signed. Thus, the agreement could

---

[11] The court noted that the agreement was ambiguous as to whether the deposit was to be forwarded after all the sellers had signed or after the sellers *and* the buyer had signed. *Williams*, 974 So. 2d 178, 180 (La. Ct. App 2d Cir. 2008). This issue was moot, however, because the seller had not received the deposit by the time all of the parties signed the agreement. *See id.* at 180–81.

have been signed one day after it was written, or one year after it was written.  Crucially, the court did not find this issue of consequence in assessing whether the term for paying the deposit was fixed or clearly determinable.  Rather, the court focused on the fact that the term for performance was directly tied to the signing of the agreement, regardless of when the agreement would eventually be signed.  Stated in the abstract, *Williams* stands for the proposition that a term for the performance of an obligation is fixed or clearly determinable when it is triggered by another event, even if it is uncertain when that triggering event will occur.

The *Williams* court's interpretation of article 1990 is easily applied to the equipment lease in this matter.  As discussed *supra*, the activation of the lease (and thus the warranty against vices or defects) is triggered by the commencement of delivery to L&A.  The Hammer left Conmaco's yard en route to L&A's jobsite on December 20, 2011, thereby triggering the obligation to deliver a Hammer free of vices and defects.  The alleged delay in performing this obligation automatically put Conmaco in default.

Conmaco may argue that the Court's interpretation of article 1990 places it in a vulnerable position: if Conmaco was unaware of the defect in the Hammer and was not required to be put in default, then how could Conmaco know of its failure to perform under article 1990?  In such situations, it may be argued, the obligee can delay in notifying the obligor of his failure to perform, thereby unduly increasing the quantum of moratory damages.

This argument is easily dismissed.  It is axiomatic that in a breach of contract action such as this one, the obligee has a duty to mitigate his damages.  La. Civ. Code art. 2002; *Elliot v.*

*Normand*, 976 So. 2d 738, 745 (La. Ct. App. 5th Cir. 2008) (citation omitted).   "[I]f an obligee neglects to mitigate his damages his recovery must be reduced to the extent both of his negligence and its consequences."  La. Civ Code art. 2002 cmt. b.  Thus, to the extent an obligee neglects to timely inform the obligor of its failure to perform, the obligee's moratory damages will be reduced proportionately.  Accordingly, the Court finds that the duty to mitigate damages provides adequate protection for obligors like Conmaco.

    B. *Whether L&A's Damages are Reasonable Foreseeable and Causally Related to Conmaco's Failure to Perform*

"Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."  La. Civ. Code art. 1995.  A good faith obligor is liable for all reasonably foreseeable damages caused by his failure to perform.[12]  La. Civ. Code arts. 1994; 1996.

Conmaco contends that L&A's damages were not reasonably foreseeable.  According to comment b of the Louisiana Civil Code article 1996:

> Foreseeable damages are such damages as may fall within the foresight of a reasonable man. In distinguishing foreseeable from unforeseeable damages, the court should consider the nature of the contract, the nature of the parties' business, their prior dealings, and all other circumstances related to the contract and known to the obligor. Any special circumstances made known to the obligor by the obligee should also be taken into account.

As comment b makes abundantly clear, the forseeability inquiry is fact-intensive.  The summary judgment record is not nearly developed enough to take this inquiry away from the jury.

---

[12] L&A has not alleged that Conmaco acted in bad faith, nor is there any evidence in the record of bad faith.  Accordingly, the Court need not address Louisiana Civil Code article 1997.

26

Conmaco also argues that L&A's damages were not caused by Conmaco's alleged failure to timely deliver a Hammer free of vices or defects.  Conmaco characterizes L&A's damages as labor expenses, equipment costs, insurance premiums, and facility rental payments.  Conmaco argues that L&A would have incurred these expenses regardless of Comaco's alleged breach of warranty.  For example, Conmaco states that L&A would have had to pay its workers for work performed from January 2, 2012, through February 27, 2012 (the "Down Time"), regardless of whether the Hammer would have been working.   L&A counters that many of the challenged expenses were not inevitable.  For example, L&A points to evidence in the record tending to establish that some of the work force retained during the Down Time was initially hired solely for the purpose of operating the Hammer.  L&A contends that it retained these workers during the Down Time so that work could resume immediately once the Hammer was fixed.

Whether and to what extent L&A's damages were caused by Conmaco's breach of warranty is clearly an issue of fact for the jury to decide.  *See Trunk v. Med. Ctr. of La. at New Orleans*, 885 So. 2d 534, 539 (La. 2004) (" The assessment of 'quantum,' or the appropriate amount of damages, by a jury is a determination of fact.") (citation omitted).  The Court cannot conclude on the record before it that L&A did not suffer *any* damages causally related to Conmaco's alleged breach of warranty.

**CONCLUSION**

27

For the reasons previously stated, the claim for breach of warranty is the only counterclaim remaining for trial.  Accordingly, the Motion for Summary Judgment Regarding Counterclaims is GRANTED IN PART and DENIED IN PART.  The Motion for Summary Judgment Regarding Damages is DENIED, as genuine issues of material fact exist as to whether L&A's damages were forseeable and causally related to Conmaco's alleged breach of warranty.

New Orleans, Louisiana, this 30th day of October, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**