UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONMACO/RECTOR, L.P. | CIVIL ACTION |
| VERSUS | NO: 12-2337 |
| L & A CONTRACTING COMPANY | SECTION: "H" (4) |

## REPORT AND RECOMMENDATION

On May 6, 2014, the presiding U.S. District Judge issued an Order granting an award of reasonable attorney's fees to Plaintiff, Conmaco / Rector L.P., ("Conmaco"), and against Defendant, L&A Contracting Company ("LAC"). *See* R. Doc. 97. The presiding U.S. District Judge referred the matter to the undersigned to determine the reasonableness of Conmaco's fee application. *Id*.

Now before the Court is Conmaco's **Motion for Recovery of Attorney's Fees & Costs (R. Doc. 98)**, in which Conmaco seeks an award of reasonable attorney's fees in the amount of $145,622.50, and $6,719.91 in costs. LAC has opposed the motion. *See* R. Doc. 99. Conmaco filed a supplemental memorandum. *See* R. Doc. 102. The motion was heard on the briefs.

**I.      Background**

This civil action arose out of an equipment lease between Conmaco and L&A. Pursuant to the lease agreement, Conmaco agreed to lease a hydraulic hammer and certain component parts (hereinafter the "Hammer") to L&A. *See* R. Doc. 62, p. 1. L&A intended to use the Hammer to install large piles in connection with a flood control project on the Houma Navigation Canal. *Id.* at 1-2.

On December 20, 2011, Conmaco delivered the Hammer to the L&A job site. *Id.* at 2. During the week of January 2, 2012, L&A used the Hammer to drive a number of test piles. *Id.* On January 9, 2012, the Hammer malfunctioned due to the failure of a component part. *Id.* Conmaco subsequently ordered a replacement part from the manufacturer. *Id.* The Hammer was inoperable from the date of failure until February 27, 2012, the day it was returned to L&A in working condition. *Id.*

Conmaco subsequently submitted separate invoices for the period during which the Hammer was non-functional, for labor charges related to the disassembly of the Hammer, and for damage to the Hammer discovered during a post-rent inspection. *Id.* L&A refused to pay the invoices, after which Conmaco brought the instant suit. On November 19, 2013, the presiding District Judge heard a bench trial on the merits of the instant action. After significant post-trial brief practice, the presiding District Judge on May 6, 2014, entered a judgment in favor of Conmaco and against LAC, awarding Conmaco reasonable attorney's fees and costs from LAC. *See* R. Doc. 97.

## II.     Standard of Review

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

1974).[1] The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

**III.   Analysis**

    **A.   Calculating a Reasonable Rate**

The fee application submitted by Conmaco seeks to recover fees from three attorneys who worked on the case. These attorneys are Stewart F. Peck ("Peck"), Joseph P. Briggett ("Briggett") and Benjamin W. Kadden ("Kadden") who practice law in the New Orleans, Louisiana office of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard. *See* R. Doc. 98-1, p. 1; R. Doc. 102-1, R. Doc. 102-2. Peck, Briggett and Kadden have submitted Affidavits in support of the motion.

        **1.   Peck, Briggett and Kadden's Rates**:

Peck's Affidavit states that he is a shareholder in Lugenbuhl, Wheaton, Peck, Rankin & Hubbard ("the Lugen Firm"), and has been licensed to practice law in Louisiana since he graduated from Tulane University School of Law in 1977. *See* R. Doc. 98-1, p. 1. During his legal career, Peck states that he has been lead trial and appellate counsel in over 60 cases in federal and state courts. *See* R. Doc. 98-4, p. 1. He states that he was listed in Best Lawyers in America, Best Lawyers in New Orleans, Superlawyers and has also been listed in Chambers USA. *Id.* He also states that he practices in the areas of Admiralty and Maritime, Bankruptcy Reorganization, Commercial

---

[1] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719.

Litigation, Marine Finance, Mergers and Acquisitions, Corporate and Oil and Gas Lien Law. *Id.* He states that he was one of the attorneys of record in the instant matter. *See* R. Doc. 98-1, p. 1. The billing sheets which have been submitted indicate that "SFP" bills at a rate of $285.00 per hour. *Id.*

Kadden's Affidavit states that he is a shareholder at the Lugen Firm, and has been licensed to practice law in Louisiana since he graduated from Tulane University School of Law in 2005. *See* R. Doc. 102-2, p. 1. Kadden states that he served as a judicial law clerk to the Honorable Alma Chasez in the United States District Court for the Eastern District of Louisiana, from 2004-2005. *See* R. Doc. 102-2, p. 4. He states that he has earned an AV Preeminent Rating by Martindale-Hubbell, and was named as a Super Lawyers Rising Star of 2014. *Id.* He also states that his primary areas of practice include Bankruptcy, Restructuring, Creditors' Rights, Corporate & Commercial Law, Mergers & Acquisitions, Litigation and Asset-Based Finance. He states that he was one of the attorneys of record in the instant matter, and that during the period between the inception of this action and November 30, 2012, his rate was $260.00 per hour. *Id.* He further states that from December 1, 2012, through the present, his hourly fee is $250.00 per hour. The billing sheets which have been submitted indicate that "BWK" billed at a rate between $250.00 - $260.00 per hour.

Briggett's Affidavit states that he is an associate at the Lugen firm, and has been licensed to practice law in Louisiana since graduating from Tulane University School of Law in 2010. *See* R. Doc. 102-1, p. 1. Briggett states that he served as an Extern to the Honorable Jerry A. Brown, Bankruptcy Judge for the U.S. Bankruptcy Court for the Eastern District of Louisiana during 2009-2010. *Id.* at 4. He states that he practices in areas of Intellectual Property, Bankruptcy, Restructuring & Creditors' Rights and Litigation. *Id.* Briggett states that his standard fee for commercial litigation work in New Orleans ranges between $215.00 and $240.00 per hour. *See id*. at 2. He states that he

was one of the attorneys of record in the instant matter. The billing sheets indicate that "JPB" billed at of $225.00 per hour. *Id.*

Attorney's fees must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990). Such a request is reasonable if it falls within the "range" of reasonable fees awarded. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley*, 461 U.S. at 439 n. 15.

Rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also White v. Imperial Adjustment Corp.*, No. 99-03804, 2005 WL 1578810, at *8 (E.D. La. Jun. 28, 2005) (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).

Where "an attorney's customary billing rate is the rate at which the attorney requests the

5

lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. Where a rate is not contested, it is *prima facie* reasonable. *Louisiana Power & Light*, 50 F.3d at 328; *Trahan v. Crown Drilling, Inc.*, No. 2011 WL 3320531, at *4 (E.D. La. July 13, 2011) (Roby, M. J.) (finding that attorney's requested rate was reasonable when the rate was not challenged by the opposing party). The Court notes that in LAC's opposition, LAC makes no challenge to the reasonableness of the rates charged by either Peck, Briggett or Kadden. Therefore, the Court finds that the rates of Peck, at $285.00 per hour; Briggett, at $225.00 per hour; and Kaden, at $260.00 from the inception of the action through November 30, 2012, and from December 1, 2012 through the present at $250.00 per hour; as charged are reasonable.

### 2. Kirby Blanchard's Rate

Conmaco's fee application also includes billing entries of an unidentified individual, Kirby Blanchard ("Blanchard"). *See* R. Doc. 98-3, p. 8. The application does not specify whether Blanchard is an attorney at the firm, or if he or she is a paralegal. Blanchard is also not enrolled as an attorney of record in this matter. Furthermore, none of the affidavits specify Blanchard's title and / or role, or provide any information as to the qualifications, experience or any special skills of Blanchard so as to determine whether the proposed hourly rate of $250.00 is reasonable. Therefore the reasonableness of the rates as well as the 10.75 hours in billing entries[2] for Blanchard are disallowed for failing to present any evidence substantiating his or her background, education and experience.

### B. Calculation of the Fee Award

Conmaco's fee application seeks to recover an award of reasonable attorney's fees in the

---

[2]Blanchard's entries are as follows: 3/18/13: 1.00 "meeting with Benjamin Kadden . .";  3/22/13–5.00 "analyze discovery. . ."; 3/27/13–1.00 "revise memorandum . . ." ; 3/28/13– 3.75 "analyze discovery . . .".

amount of $145,622.50, and $6,719.91 in costs. *See e.g.,* R. Doc. 98. In support of their motion, Conmaco has provided the Court with itemized billing entries as to the billing attorneys, Peck, Briggett and Kaden, on the file.

Conmaco further argues that the attorneys fees charged by Peck, Briggett and Kaden are reasonable in accordance with the *Lodestar* method, as this claim involved novel issues of contract law and difficult factual questions for trial. *See* R. Doc. 98-5, p. 2. Conmaco argues that this case involved extensive discovery practice as well as significant motion practice and trial preparation. Thus, Conmaco also argues that the fee award as submitted is reasonable. *Id.*

In opposition, LAC contends that in support of its motion, Conmaco submitted invoices reflecting 599.5 hours of work performed by Peck, Briggett and Kaden. *See* R. Doc. 99, p. 3. However, LAC contends that of the hours expended, approximately 40 hours of the billed time included interoffice communications among the three attorneys, which total between $8,493.75 and $10,758.75, depending which attorneys were involved. *Id.* LAC contends that these interoffice communications are significant and not likely an exercise of "billing judgment" as required under the *Lodestar* method of calculating attorneys fees.

Further, LAC argues that the presence of multiple attorneys at hearings, depositions, trial, and throughout the litigation inevitably "resulted in a significant increase to Conmaco's incurred attorney's fees." *See* R. Doc. 99, p. 4. LAC contends that this type of billing does not reflect exercise of billing judgment, and may be considered "excessive, duplicate or inadequately documented" under the *Lodestar* method. LAC also contends that this matter did not involve complex issues as Conmaco argued. Thus, LAC argues that this Court should reduce the amount of the award Conmaco seeks to 20% of the amount recovered in this matter.

After careful consideration of the billing entries on Conmaco's fee application, the Court

finds that they are not reasonable as stated; as such, the next issue is how to calculate an appropriate, reasonable fee amount. To that end, the Court may either conduct a line-by-line analysis of the bill submitted, or else reduce the award by a reasonable percentage.

Given the fact that Conmaco has submitted an itemized list of billable entries, as well as the fact that these entries are reasonably delineated, the Court will conduct a line-by-line analysis of the bill in question to determine whether it is reasonable. The Court sorts Conmaco's entries into the following categories: (a) vague entries, (b) block billed entries, and (c) remaining entries. The Court will then proceed to determine the reasonable fee among the entries of these three categories, as well as all remaining entries which are otherwise reasonable.

### 1.     **Vague Entries**[3]

Conmaco' fee application contains numerous entries for which the Court cannot reasonably verify the time requested is appropriate for the task performed. "It is well settled that supporting documentation for attorney's fees must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that the billing is reasonable." *Yelton v. PHI, Inc.*, No. 09-3144, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (internal quotations omitted).[4] Litigants who submit vague fee applications "take their chances" that those entries will be disallowed. *League of United Latin American Citizens No. 4552 v. Roscoe ISD*, 119 F.3d 1228, 1233 (5th Cir. 1997) (citing *Louisiana Power & Light*, 50 F.3d at 327).

For example, other courts have found that descriptions such as "legal issues," "conference re: all aspects," and "call re: status" are vague descriptions. *See In re Donovan*, 877 F.2d 982, 995

---

[3]Where an entry is both vague and block billed, the entry will be considered under the block billing category.

[4]Additional case numbers for *Yelton* were Nos. 09-3475, 09-3551, 09-3459, 09-3814, 09-3496, 09-3847, 09-4197, 09-4182, 09-4350, 10-0008, and 10-1328.

(D.C. Cir. 1989); *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 706 (E.D. La. 2001). "[T]he district court has broad discretion to exclude or reduce the entries that are vague." *Walker v. City of Mesquite, Texas*, 313 F.3d 246, 252 (5th Cir. 2002).

In this case, upon review of Conmaco's fee application, the Court finds a number of entries – a total of 7.25 hours for Peck,[5] 89.25 hours for Briggett,[6] and 1.25 hours for Kaden[7] are properly viewed as vague. In particular, the Court notes that a substantial number of the entries in question

---

[5] Peck's entries are as follows: 3/15/13–.25 "review emails . . ."; 6/11/13–.25 "additional emails . . ."; 7/8/13–.25 "emails regarding . . ."; 7/9/13–.25 "emails . . ."; 7/15/13–.25 "emails regarding . . ."; 7/16/13–1.0 "prepare for hearing . . ."; 1.0 "prepare for . . ."; 7/17/13–.25 "emails with .. ."; 8/13/13–.25 "emails . . ."; 8/30/13–.50 "emails regarding . . ."; 10/24/13–.25 "emails regarding jury . . ."; 11/6/13–.25 "emails . . ."; .25 "emails and conference. . ."; 11/8/13–.25 "telephone . . ."; 11/12/13–1.0 "meet with . . ."; 1.0 "review depositions. . .".

[6] Briggett's entries are as follows: 9/21/12–1.5 "legal research regarding . . ."; 9/21/12–.5 "review and analyze . . ."; 4/5/13– 2.5 "review documents. . ."; 2.0 "draft of memorandum . . ."; .25 "revisions to memo. . ."; 4/8/13– .25 "correspondence with . . ."; 4/10/13–1.50 "research and analysis. . ."; 4/11/13–2.75 "research and analysis. . ."; 4/18/13–2.25 "legal research . . ."; .50 "review and cross reference . . ."; 5/3/13– .50 "research and analysis. . ."; 5/6/13–1.00 "legal research . . ."; 1.25 "draft and revise . . ."; 5/8/13–.25 "receipt and review. . . "; 5/14/13–.75 "revision of opposition . . ."; 5/15/13–1.0 "multiple emails . . ."; .25 "emails regarding consent . . ."; 5/21/13–.25"receipt and review. . ."; .25 "revision of motion . . ."; 5/28/13–.25 "emails regarding . . ."; 5/31/13–1.0 "review emails . . ."; 6/3/13–.75 "review interrogatory. . ."; 6/4/13–.25 "receipt and review . . ."; 6/5/13–.25 "email correspondence. . ."; 6/6/13–.25 "prepare documents . . ."; 1.25 "finalize document . . ."; 6/11/13–.25 "receipt and review. . ."; .25 "receipt and review. . ."; 6/12/13–.25 "emails . . ."; 6/17/13–.50 "research/analyze. . ."; 6/28/13–1.75 "review and analyze . . ."; 7/1/13–1.0 "conduct westlaw . . ."; 1.25 "draft factual . . ."; 3.50 "draft argument section. . ."; 7/2/13–3.75 "continue drafting brief . . ."; 7/8/13–1.0 "revision of discovery . . ."; 7/10/13–.50 "telephone . . ."; .25 "receipt and review. . ."; 7/15/13–1.25 "preparation of third party. . ."; 7/16/13– .25 "discussion with Peck . . ."; 1.00 "revisions to subpoena. ."; 7/17/13–.50 "finalize . . ."; .25 "circulate motion . . ."; 7/30/13–1.25 "document review"; 1.25 "revise discovery responses"; .50 ". . . privilege log"; .25 "circulate draft response . . ."; .50 "finalize . . ."; 8/1/13–.25 "communications regarding . . ."; 8/6/13–.25 "reissue subpoena . . ."; 8/7/13– .25 "subpoena to ICE follow up . . ."; .25 "email and telephone . . ."; .25 "correspondence. . ."; 8/21/13–.25 "email communications"; 9/4/13–2.5 "westlaw research . . ."; 9/6/13–4.25 "travel to and from . . ."; 3.25 "attend morning deposition"; 3.75 "attend afternoon depositions"; 9/11/13–.25 "receipt and review . . ."; 9/20/13–.25 "email correspondence"; 9/23/13–1.5 "legal research reply brief. . ."; 9/27/13–.25 "emails regarding request . . ."; 10/2/13–.50 "witness and exhibit list. . ."; 10/11/13–.50 "research and analysis . . ."; 10/24/13–.25 "file documents with Court. . ."; 10/25/13–.75 "research . . ."; 10/28/13–.50 "review proposed . . ."; 10/30/13–.25 "Preparations . . ."; .25 "research . . ."; .75 "review opinion . . ."; .25 "further discussions. . ."; 10/31/13–.25 "final. . ."; 11/1/13–1.5 "westlaw research . . ."; 11/6/13–2.5 "research . . ."; 11/7/13–2.25 "review of documents . . ."; 11/8/13–2.75 "research . . ."; .25 "emails. . ."; 11/11/13–.25 "coordinate production . . ."; 11/14/13–.50 "emails with . . ."; 11/15/13– 1.0 "meeting with Mike . . ."; .50 "research and analysis . . ."; 11/22/13–1.75 "preliminary . . . "; 12/26/13– .50 "transcribe . . ."; 12/29/13– .75 "draft argument. . ."; .50 "draft of . . ."; 1/7/14–2.25 "review final . . ."; .75 "revisions . . ."; 1.0 "conduct analysis . . ."; .50 "review. . ."; 1/8/14–1.25 "conduct legal research . . .";1/13/14–.50 "review opposing. . .".

[7] Kaden's entries are as follows: 9/24/12–.25 "receipt of summons. . ."; 12/12/12–.25 "continue research on motion to dismiss. . ."; 7/8/13–.50 "continue work on . . ."; 9/6/13–.25 "review document production . . .".

refer to emails sent "regarding" an issue in the case, but do not reference the recipient or sender of the email; or reference the recipient but do not provide the subject matter thereof.

The Court notes that such electronic communications are archived in the ordinary course of business, and that in other instances where the attorneys request a fee in connection with an email communication, they specified both the recipient and the subject. Peck, Brigget and Kaden provide no explanation in any of filings why it was unable to provide the name of the recipient of all of its electronic communications. Having taken its "chances" that its application would be viewed as vague due to this and other clearly avoidable oversights, the Court finds that awarding the full amount of any vague entries for either Peck, Briggett or Kaden would be unreasonable.

As such, the Court exercises its discretion and awards Peck, Briggett and Kaden 50% of the total time requested in connection with these vague entries. *See Yelton*, 2012 WL 3441826, at *8 (reducing vague entries by 50%). Accordingly, the Court awards Peck 3.6 hours for these entries, Briggett 44.6 hours for these entries, and awards Kaden .6 hours for these entries.[8]

### 2. Block Billed Entries

The fee application submitted by Conmaco contains a number of entries which are viewed as "block billing." This term can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 n.9 (10th Cir.1998). "This practice can make it impossible for the court to determine the reasonableness of the hours spent on each *task*." *Canon U.S.A., Inc. v. S.A.M., Inc.*, No. 07-1201, 2009 WL 35334, at *4 (E.D. La. Jan. 6, 2009) (emphasis added). *See also Yelton*, 2012 WL 3441826, at *8; *Gulf Coast Facilities*

---

[8] The Court has rounded up both Klemm and Scott's hours to the nearest 0.1 percent.

*Management, LLC v. BG LNG Services, LLC*, No. 09-3822, 2010 WL 2773208, at *8-*9 (E.D. La. July 13, 2010). While block billing creates impediments to the analysis of the attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorney's fees. *Hensley*, 461 U.S. at 437, n.12. The method most often used to compensate for block billing is a flat reduction of a specific percentage from the award. *See, e.g., Canon*, 2009 WL 35334, at *5 (citing cases).

The Court notes that attorney invoices contain evidence of block billing for Peck, Briggett and Kaden. Because these entries can be segregated, however, the Court finds that the appropriate resolution is to decrease the total entries which block billing occurred by a percentage. In this case, the Court finds that a reduction of those "block billed" entries for all three attorneys by 30% is appropriate. *See, e.g.*, *Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 F. App'x 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012).

Here, the total number of block billed hours is (a) 78.5 hours for Peck,[9] (b) 86 hours for

---

[9] Peck's entries are as follows: 11/9/12– .25 "receive and review . . ."; 12/4/12–1.0 "review pleadings . . ."; 3/14/13– .50 "review numerous . . ."; 5/15/13 –.50 "emails and conferences. . ."; 6/5/13–.25 "conference . . ."; 6/6/13– 2.00 "review discovery . . ."; 6/10/13– 3.75 "meet with Mr. Favalore. . ."; 6/11/13–.50 "emails with L&A . . ."; 6/14/13– 1.5 "meet with . . ."; 6/17/13– .25 "emails with . . ."; 6/18/13–.50 "emails with . . ."; 2.75 "email with Mr. Ross. . ."; 6/27/13– .25 "email with . . ."; 6/28/13– .25 "emails. . ."; 7/16/13– .50 "conference . . ."; 7/30/13–.50 "review document . . ."; 9/4/13– 1.0 "conference"; 9/6/13–11.00 "to and from Hattiesburg. . ."; 9/24/13– .50 "review and revise"; 9/26/13– .50 "telephone conference"; 10/4/13– 1.00 "telephone conference. . ."; 10/17/13–.50 "telephone conference. . ."; 10/24/13– 3.50 "prepare for and . . ." ; .50 "review and revise . . ."; 11/12/13– .50 "review objections . . ."; 11/13/13–.50 "review . . ."; 1.50 "review depositions . . ."; 1.00 "review Ross deposition . . ."; 10/24/13– .50 "review and revise . . ."; 10/25/13–.75 "receipt and review . . ."; 10/30/13–1.00 "review . ."; 10/31/13–1.50 "prepare for . ."; 11/14/13– 4.00 "review exhibits . . ."; 11/15/13–7.0 "prepare witnesses. . ."; 11/17/13– 4.50 "review depositions. . ."; 11/18/13– 7.00 "prepare for trial . . ."; 1.00 "review pretrial order . . ."; 11/11/13–4.00 "review . . ."; 11/19/13–1.50 "meet with Mr. Messrs. . ."; 11/20/13– 2.0 "prepare Lynn Cox. . ."; 11/25/13– 2.00 "research contract law . . ."; 12/29/13– 1.50 "emails with Mr. Briggett"; 12/30/13– 2.75 "review trial transcript. . ."; 1/14/14 – .50 "review L&A's post trial . . ."; 1/13/14– .75 "emails and calls."

11

Briggett,[10] and 22.25 hours for Kaden.[11]  After reducing the total number of hours by 30%, the Court awards Peck 55 hours for these entries, Briggett 60.2 hours for these entries, and awards Kaden 15.8 hours for these entries.[12]

---

[10]Briggett's entries are as follows: 11/7/12–.50 "interoffice . . ."; 12/7/12– 1.5 "research . . ."; 12/18/12–1.25 "research regarding affirmative . . ."; 4/3/13– 2.5 "review discovery  . . ."; 5/7/13–.25 "file motion . . ."; 5/9/13– .25 "receipt and review. . ."; 5/14/13– .25 "interoffice conference. . ."; 5/15/13–.25 "receipt and review . . ."; 5/15/13 –.25 "telephone . . . "; .25 "emails and discussion . . ."; 6/5/13– .50 " responses to discovery . . ."; 6/9/13– 1.75 "review supplemental"; 6/10/13–.25 "interoffice. . ."; 6/17/13–.25 "review emails . . ."; 6/18/13–.50 "research discovery"; 6/26/13– .50 "review . . ."; 6/27/13–.75 "analysis regarding. . ."; .25 "receipt and review . . ."; 6/28/13– .50 "emails with L&A . . .'; 7/3/13 –.75 "preparation of . . ."; 7/3/13– .50 "finalize. . ."; 7/9/13– 1.5 "revise discovery. . ."; 7/11/13– .50 "multiple telephone conferences"; 7/15/13– 1.75 "preparation . . ."; 7/16/13– 1.25 "preparation . . ."; 7/18/13–.75 "review . . .'; .5 "review . . ."; 8/2/13–.50 "review deposition . . ."; 8/8/13–.25 "emails . ."; 8/12/13–.25 "emails . . ."; 8/13/13–.50 "email . . ." 8/13/13 –.25 "interoffice conference . . ."; 8/16/13–.25 "email . . ."; 8/30/13–.75 "strategy and analysis . . ."; 8/29/13–.50 "coordinate. . ."; 9/9/13– 2.75 "continue drafting motion . . ."; 1.25 "examine certain . ."; 9/10/13–3.0 "continue drafting . . ."; 9/12/13– .25 "telephone and email . . ."; 9/23/13– .5 "telephone discussion"; 9/24/13– 3.25 "draft of reply . . ."; .50 "emails regarding . . .'; 9/24/13– .25 "telephone and email communication . . ."; 9/26/13–.25 "telephone discussions"; .25 "interoffice. . ."; 9/30/13–.75 "revisions . . ."; 9/30/13–.25 "telephone . . ."; 10/16/13–.25 "plan with regard. . ."; .25 "analyze . . ."; 10/16/13–.25 "interoffice . . ."; 10/20/13–3.00 "conduct analysis. . ."; 10/21/13–.25 "email with Mr. Ross. . ."; 10/24/13– .25 "interoffice conference. . ."; 10/24/13–2.25 "research/analysis. . ."; 10/28/13–2.25 "analyze. . ."; .25 "telephone and email . . ."; 10/29/13– .25 "further emails. . ."; 10/31/13 –.50 "modification . . ."; 11/1/13– 1.75 "interoffice conference . . ."; .50 "email and telephone. . ."; 11/4/13–.25 "email and telephone. . ."; 11/5/13– .75 "preparations for trial . . ."; .75 "analysis. . ."; 11/6/13–1.50 "prepare . . ."; .75 "analyze potential. . ."; 11/7/13–.25 "email and telephone. . ."; .50 "receipt and review. . ."; .25 "teleconference"; 11/8/13– 1.5 "review and analysis. . ."; .50 "telephone. . ."; 11/9/13–2.25 "research and analysis. . ."; 11/10/13–4.75 "research . . ."; 11/11/13– 2.75 "conduct legal research . . ."; 11/11/13– 1.25 "review L&A. . ."; 11/13/13– 1.25 "prepare witness list . . ."; 1.50 "continue review . . ."; 11/13/13– .25 "telephone and email . ."; .25 "telephone and email . ."; .25 "review. . ."; 11/14/13–.50 "review emails . . ."; 11/14/13–.50 "review emails . . ."; .50 "review and analysis"; 11/15/13–1.50 "research regarding . . ."; 1.5 "preparation  . . ."; 11/16/13–1.00 "preparation of subsequent remedial  . . ."; 11/18/13– 1.00 "research, analysis. . ."; 11/20/13 – .25 "telephone discussion . . ."; 11/22/13–1.0 "receipt and review . . ."; 11/25/13– 2.75 "review court's order . . ."; 12/2/13– .50 "telephone and email . . ."; 12/3/13– .50 "communication. . ."; 12/6/13– .50 "draft motion . . ."; 12/10/13–.25 "review status . . ."; 12/12/13–.25 "email and telephone. . ."; 12/12/13– 1.0 "research and analysis . . ."; 12/25/13– 1.50 "draft post trial . . ."; 1/7/14– .50 "review exhibits . . ."; 1/8/14– 1.50 "review of transcript. . ."; .75 "analyze issues and draft . . ."; 1/14/14– .25 "email communication . . ."; 1/22/14–.25 "communication . . .".

[11]Kaden's entries are as follows: 9/20/12–3.00 "detailed work . . ."; .50 "review and analyze. . ."; 9/21/12–.75 "calls and emails . . ."; 1.5 "review and analyze. . ." 1.25 "final review . . ."; 11/7/12– "detailed review . . ."; .50 "review service . . ."; 1.25 "prepare motion for ext . . ."; 10/6/12–.25 "receipt and review . . ."; 11/6/12– .25 "receipt and review . . ." 11/9/12–.25 "receipt and review  . . ."; 11/19/12– .50 "participate in Rule 26(f). . ."; 11/30/12–.75 "emails. . ."; 12/3/12– .50 "receipt and review . . ."; 12/4/12– 1.0 "prepare . . ."; 12/6/12–.25 "receipt and review . . ."; 12/17/12–1.0 "continue work . . ."; 1/14/13–3.50 "detailed review . . ."; .25 "review and revise . . ."; 1/15/13– 1.25 "continue work . . ."; 3/12/13–.25 "calls and emails . . ."; 4/8/13– .25 "calls and emails . . ."; 5/7/13- .50 "continue work  . . ."; 5/15/13–.25 "receipt and review . . ."; .50 'call with opposing counsel . . ."; 5/30/13–.25 "voice mail . . ."; 7/3/13–.1.50 "review and revise . . ."; 8/13/13–.25 "emails. . .".

[12]The Court has rounded up the hours to the nearest 0.1 percent.

### 3. **<u>Remaining Entries</u>**

Of the remaining entries in Conmaco's fee application which were not (a) vague or (b) block billed, they total 51 hours for Peck,[13] 235.75 hours for Briggett,[14] and 20.25 hours for Kaden.[15]

---

[13] Peck's entries are as follows: 3/11/13– .25 "emails with Mr. Kadden. . ."; 4/7/13– 1.0 "review file . . ."; 4/8/13–1.5 "review documents . . ."; 4/9/13–1.00 "prepare for deposition . . ."; 7.00 'to and from Hattiesburg . . .'; 4/16/13– .25 "interoffice conference with . . ."; 5/7/13– 1.00 "review and revise SJ . . ."; 5/8/13– .25 "telephone discussion . . ."; 5/9/13– .75 "telephone conferences . . ."; 6/7/13 –2.00 "prepare for and meet with Falvalore . . ."; 6/9/13–.25 "emails with Briggett regarding supplemental discovery . . ."; 6/26/13– .25 "interoffice . . ."; 8/13/13–.25 "emails. . ."; 8/29/13–.25 "interoffice conference. . ."; 9/5/13–2.75 "meet with Mr. Briggett. . ."; 1.50 "continue preparation . . ."; 9/18/13–.50 "review pleadings. . ."; 10/16/13– .25 "conference . . ."; .25 "review correspondence . . ."; 10/21/13 –.75 "work on. . ."; .50 "interoffice. . ."; 10/22/13–.50 "emails and . . ."; 10/24/13–.25 "telephone discussion . . ."; .25 "interoffice conference. . ."; 10/25/13–.25 "interoffice conference. . ."; .75 "go over pretrial . . ."; 10/28/13– .50 "review final pretrial order. . ."; 10/31/13 – .75 "continued . . ."; .25 "calls . . ."; 11/1/13–.25 "conference . . ."; 11/5/13–.25 "interoffice conference. . ."; 11/8/13–.50 "interoffice conference . . ."; 11/10/13– 1.00 "review CT . ."; 11/12/13– .50 "review L&A. . ."; 11/14/13 -- .50 "call with Butch Allen. . ."; 11/14/13–.50 "interoffice conference. . ."; 11/19/13–.75 "meet with witnesses. . ."; 6.25 "attend trial . . ."; 11/20/13–1.50 "meet with Mr. Myers. . ."; 3.00 "meet with Butch Allen. . ."; 11/21/13 – 1.00 "meet with witnesses. . ."; 6.50 "attend trial and meet. . ."; .50 "telephone conferences. . ."; 11/27/13–.25 "conference with Mr. Briggett. . ."; 11/27/13– .25 "telephone discussion . . ."; 12/3/13–.25 "interoffice conference. . ."; 12/4/13–.25 "interoffice conference. . ."; 12/18/13–.25 "interoffice conference. . ."; 1/12/14–.75 "review and revise. . .".

[14] Briggett's entries are as follows: 9/21/12– .25 "interoffice conference . . ."; 9/21/12– .50 "further discussion"; .50 "review and revise . . ."; 9/25/12– .25 "receipt of service . . ."; 11/7/12–.25 "review answer . . ."; 1/14/13– 1.00 "review and revise . . ."; 4/5/13– .25 "interoffice conference . . ."; 4/8/13–1.25 "preparation for. . ."; 4/8/13– .25 "conference . . ."; 4/9/13– 6.75 "travel to and from . . ."; .50 "preparation of documents . . ."; 4/15/13–.50 "receipt and review . . ."; 4/16/13– 2.25 "review deposition and other documents . . ."; 4/17/13– 1.25 "analysis of genuine . . ."; 4/18/13– 2.50 "draft of memorandum . . ."; 2.25 "continue drafting . . ."; 5/1/13–.25 "email and discussion . . ."; 5/4/13– 1.50 "legal research regarding consequential . . ."; 5/6/13– .25 "legal research . . ."; .25 "draft of memorandum . . ."; .50 "legal research . . ."; 2.50 "drafting and revising . . ."; .50 "check record . . ."; .50 "draft and revise . . ."; 5/7/13– .50 "review and revise . . ."; 5/7/13– .50 "receipt and review . . ."; 1.75 "finalize and review . . ."; 1.25 "finalize exhibits . . ."; .25 "file motion . . ."; 5/9/13– .25 "coordinate delivery . . ."; 5/10/13– .25 "email and discussion with Benjamin Kadden"; 5/13/13– .50 "legal research. . ."; 1.75 "draft of opposition . . ."; .25 "email correspondence . . ."; .25 "telephone discussion . . ."; .25 "email correspondence . . ."; 5/14/13– .25 "interoffice conference . . ."; .75 "receipt and review . . ."; .50 "preparation of memorandum . . ."; .25 "email correspondence . . ."; .25 "draft correspondence . . ."; 5/15/13 –.75 "draft of summary. . ."; .50 "westlaw research . . ."; 5/16/13– .50 "interoffice conference . . ."; 5/21/13 –.25 "review of documents . . ."; 5/23/13– 2.25 "legal research . . ."; .25 "revision of memorandum . . ."; 5/24/13 –2.5 "west law research . . . "; .50 "brief memorandum . . ."; 5/30/13– .25 "receipt and review. . ."; 5/31/13–.25 "interoffice conference . . ."; .25 "receipt and review client's draft . . ."; 6/3/13 –.25 "interoffice conference with Joseph Briggett. . ."; 6/4/13–.25 "preparation of discovery responses . . ."; 6/4/13–.75 "preparation of discovery responses . . ."; .25 "review document production . . ."; 6/5/13–2.50 "continue drafting response . . ."; .25 "interoffice conference . . ."; 6/6/13– .25 "receipt and review . . ."; .50 "revision of discovery responses . . ."; .25 "preparation of document production . . ."; .25 "email opposing counsel . . ."; 6/7/13– .75 "preparations for Stewart peck . . ."; .25 "emails with opposing counsel . . ." 6/10/13– .25 "discussion with Stewart Peck . . ."; 6/10/13– .50 "discussion with Favolora . . ."; .25 "preparation of documents . . ."; 6/11/13– .25 "interoffice conference . . ."; 6/12/13– .25 "receipt and review . . ."; .25 "emails with opposing counsel . . ."; 6/23/13–.25 "coordinate . . ."; 6/24/13–.25 "coordinate regarding . . ."; 6/25/13–.25 "interoffice conference . . ."; 1.00 "review . . ."; .25 "review . . ."; .75 "review . . ."; .50 "begin preparing . . ."; .25 "preliminary search . . ."; 6/26/13– .50 "research regarding delay damages . . ."; .75 "research analyze . . ."; 1.25 "preparation of. . . "; .50 "preparation of . . ."; 6/27/13 – .50 "research regarding . . ."; .25 "interoffice conference . . .";

---

6/28/13– .75 "strategy and analysis . . ."; 6/30/13 – 1.00 "continue to review . . ."; 7/1/13–.25 "interoffice conference . . ."; .25 same . . .; 7/2/13– .25 "telephone discussion . . ."; .25 "telephone discussion . . ."; 2.25 "conduct westlaw research . . ." 1.50 "conduct westlaw research . . ."; .50 "interoffice conference . . ."; 7/3/13–.50 "revision of reply brief . . ."; 1.75 "insert section of argument . . ."; 2.00 "extensive edits. . ."; .50 "research regarding local rules . . ."; .25 "email correspondence . . ."; 7/5/13–.25 "email correspondence . . ."; 7/8/13–.25 "interoffice conference . . ."; .50 "emails with opposing counsel . . ."; 7/9/13–.75 "finalize and file joint motion . . ."; .25 "correspondence to opposing counsel  . . ."; 7/10/13– .25 "preparation for discovery  . . ."; 7/11/13–.25 "interoffice conference . . ."; 7/11/13–.75 "review discovery . . ."; .50 "analysis of L&A". . . ; 7/12/13– .75 "continue to review . . ."; 1.75 "further review and analysis  . . ."; 7/15/13–.25 "interoffice conference. . ."; .25 "email from Mr. Ross. . ."; 7/16/13–.25 "telephone status conference with Court. . ."; 7/17/13–.25 "review pleadings . . ."; 1.00 "receipt and review . . ."; 7/19/13–.25 "emails with Ross. . ."; 7/25/13–1.25 "review discovery requests . . ."; .25 "research . . ."; .50 "receipt and review . . ."; 1.00 "meeting with Mr. Ross. . ."; .50 "preparation of discovery responses. . ."; 7/26/13–1.50 "preparation of responses . . ."; 7/29/13– .25 "telephone discussion . . ."; 1.25 "preparation of discovery . . ."; 7/31/13–.25 "correspondence   . . ."; 8/5/13–.25 "correspondence . ."; 8/7/13–.25 "correspondence . ."; 8/15/13–.25 "email . . ."; 8/16/13–.75 "receipt and review. . ."; 8/20/13– .25 "telephone discussion . . ."; 8/26/13– .25 "interoffice conference . . ."; 8/30/13–2.75 "receipt and review. . ."; 8/31/13– 2.25 "document review . .."; 9/3/13–1.50 "review documents. . ."; .75 "preparation of witness. . ."; .50 "review L&A's. . ."; .25 "telephone and email. . ."; 1.00 "final revisions and add additional documents. . ."; 9/4/13–1.25 "review documents . . ."; .25 "interoffice communication . . ."; .25 "emails. . ."; 9/5/13– 2.50 "meeting . . ."; 1.25 "continue reviewing documents. . ."; .25 "email to Mr. Ross. . ."; 9/9–.50 "continue drafting . . ."; 9/10/13– 1.00 "review Lynn Cox depo . . ."; .50 "emails with Mr. Ross. . ."; 9/10/13–1.25 "go over brief. . ."; .25 "proofreading . . ."; .50 "organize exhibits . . ."; .25 "preparation . . ."; .50 "finalize and file . . ."; 9/11/13–.50 "receipt and review . . ."; .25 "email and telephone communication . . ."; .50 "receipt and review . . ."; 9/13/13– .25"telephone discussion . . ."; .25 "review deposition . . ."; 9/16/13 –.25 "interoffice conference . . ."; 9/17/13– .75 "receipt and review. . ."; .75 "receipt. . ."; 1.25 "review and analyze Statement . . ."; 9/18/13– .25 "email with opposing counsel . . ."; .25 "interoffice conference"; 9/27/13– .25 "telephone discussion . . ."; .25 "discussions  . . ."; 9/28/13–.75 "preparation . . .'; 10/1/13—.25 "receipt and review . . ."; .25 "telephone discussion. . ."; 10/3/13–.50 "receipt and review . . ."; 10/4/13–.50 "telephone discussion . . ."; .75 "preparation. . ."; .25 "correspondence. . ."; .25 "interoffice conference. . ."; 10/9/13–.75 "analysis . . ."; 10/9/13–.25 "interoffice conference . . ."; 10/15/13– .50 "review joint. . ."; 10/16/13–.50 "receipt . . ."; 10/17/13–1.50 "draft settlement. . ."; 10/20/13–2.50 "draft settlement to judge"; 1.25 "review documents . . ."; 10/21/13–2.25 "continue drafting . . ."; .50 "revisions to settlement paper . . ."; .75 "discussion . . ."; .75 "conduct legal . . ."; .25 "conduct attorney conference . . ."; 10/22/13–2.25 "draft pretrial. . ."; .25 "email communication. . ." .50 "finalize . . ." 2.00 "legal research  . . ."; 10/23/13–.25 "discussion. . ."; .75 "draft motion . . ."; 10/24/13– 2.50 "prepare for . . ."; .75 "communications . . ."; 10/24/13–.50 "multiple conferences. . ."; .25 "revisions. . ."; .25 "final review. . ."; .25 "telephone . . ."; 10/25/13–.25 "email . . ."; 10/27/13– .75 "review. . ."; .50 "review pretrial . . ."; 10/28/13–.25 "interoffice conference. . . "; 10/28/13–.25 "revisions . . ."; .50 "receipt and review. . ."; .25 "telephone conference. . ."; .75 final revisions . . .; .25 "interoffice conference . . .; .25 "receipt and review . . ." .50 "finalize. . ."; 10/29/13–.25 "emails. . ."; .25 "review  . . ."; 10/31/13– .25 "telephone discussion . . ."; .75 "attend pretrial . . ."; .50 "receipt and review . . ."; .25 "review jury waiver. . ."; 10/29/13–.50 "analysis and preparation . . ."; 11/1/13–.50 "receipt and review. . ."; .50 "memorandum . . ."; 11/5/13–.25 "telephone. . ."; 11/6/13–.25 "emails with. . ."; .25 "communication . . ."; .50 "email correspondence.. ."; 11/7/13–.50 "preparation . . ."; 2.25 "meeting with opposing counsel . . ."; .25 "revisions. . ."; .25 "discussion . ."; .25 "correspondence . . ."; 11/8/13–1.25 "continue preparation . . ."; .50 "finalize. . ."; 11/10/13–1.50 "revisions to proposed . . ."; 11/11/13–.50 "emails with opposing counsel . . ."; 2.00 "continue. . ."; 1.25 "receipt and review. . ."; .75 "lengthy discussion . . ."; .50 "receipt and review. . ."; .25 "final review. . ."; .25 " file. . ."; .75 "review . . ."; .25 "final review. . ."; .25 "file proposed. . ."; 11/12/13–2.00 "meeting. . ."; .50 "notes and analysis. . ."; 1.75 "review. . ."; 1.25 "review. . ."; .25 "review. . ."; .50 "various discussions. . ."; .50 "coordinate. . ."; 11/13/13–.25 "finalize . . ."; .50 "discussion with Peck . . ."; .25 "discussion with chambers. . ."; .50 "review opposing counsel's objections. . ."; .75 "conference with Peck . . ."; .50 "review and analyze. . ."; 11/14/13–.50 "extensive discussions. . ."; .50 "review order. .."; .25 "interoffice conference . . ."; 1.25 "review L&A. . ."; .25 "telephone discussion . . ."; .25 "interoffice conference. . ."; .50 "email . . ."; 11/15/13–.25 "discussion . . ."; 11/16/13– .75 "preparation . . ."; .25 "review pre-trial . . ."; .25 "email to Stewart Peck . . ."; 11/18/13–1.75 "final preparation . . ."; 1.50 "meet with Mr. Harold. . ."; .25 "meet with Mr. Favaloro"; 11/18/13–.25 "telephone discussion . . ."; 1.00 "revision. .

Although the Court finds that these entries are not vague or block-billed, these entries evidence a lack of billing judgment, because the remaining entries are rounded up in quarter hour increments. *Wells Fargo Equip. Fin., Inc. v. Mid-S. Servs., Inc*. No. 10-2970, 2012 WL 669288 (E.D. La. Feb. 6, 2012) *report and recommendation adopted*, No. 10-2970, 2012 WL 669302 (E.D. La. Feb. 29, 2012); citing *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642 (5th Cir.2002). *See also Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 181 (5th Cir.2007) (where the Fifth Circuit affirmed the reduction for billing judgment because of rounding up in quarter hour

---

."; .50 "prepare motion . . ."; .50 "meeting with Mr. Ross. . ."; .25 "revision of . . ."; .25 "email . . ."; .75 "final review. . ."; 1.00 "preparation . . ."; 11/19/13–7.25 "prepare for and attend trial . . ."; 1.00 "interoffice conference. . ."; .25 "review trial notes"; 11/20/13–1.50 "analysis regarding. . ."; 1.00 "meet with Butch Allen. . ."; .25 "conference. . ."; .25 "communications. . ."; 1.00 "meet with. .."; .50 "review and annotate trial notes. . ."; .50 "conduct brief legal research . ."; .75 "conduct legal research . . ."; .50 "telephone discussion with Stewart"; .75 "preparation . . ."; .50 "legal research regarding. . ." .25 "preparation . ."; 11/21/13–6.75 "prepare for and attend trial . ."; .50 "interoffice conference. . ."; .25 "telephone discussion . . ."; 11/22/13– .25 "telephone discussion with Hatcher. . ."; 11/25/13–.25 "preparation of memorandum . . ."; 11/26/13 – .50 "notes and analysis. . ."; 11/27/13–.25 "interoffice conference. . ."; 12/3/13–.50 "review trial notes. . ."; 12/4/13–.25 "conference with Court. . ."; 12/6/13–.25 "prepare order. .";12/14/13–.75 "receipt and review. . ."; 12/17/13–.75 "conference. . ."; 12/20/13–.25 "conference . . ."; 12/22/13– 2.50 "review and annotate"; 12/26/13–.75 "transcribe . . ."; 12/27/13–.50 "communication with. . ."; 12/29/13–2.25 "continue draft. . ."; 1.25 "supply citations. . ."; .50 "review and revise. . ."; .25 "emails with Stewart. . ."; 12/30/13– .75 "meeting with . . ."; .75 "review. . ."; 1.25 "revisions to post trial brief. . ."; .25 "communications. . ."; .50 "prepare and file. . ."; 12/31/13–.75 "review Stewart Peck . . ."; 1/3/14–.25 "check status and prepare brief. . ."; 1/7/14–.25 "interoffice conference. . ."; 1/9/14–2.50 "continue to draft. . ."; 1.75 "revisions to post trial brief. . ."; 1/10/14-.25 "interoffice conference. . ."; .25 "telephone discussion . . ."; .50 "further review. . ."; 1/13/14–.75 "revisions of post trial . . ."; 1.00 "interoffice conference. . ."; .75 "legal research regarding estoppel. . ."; 1.00 "proofread. . ."; .25 "email to Stewart Peck . . ."; .50 "incorporate . . ."; .25 "finalize. . ."; .25 "telephone discussion with Stewart Peck . . .".

[15] Kaden's entries are as follows:  9/25/12– .25 "receipt of service . . ."; 11/7/12– .25 "length call. . ."; 11/16/12–.25 "receipt and review"; .25 "emails with counsel . . ."; 11/26/12–.25 "follow-up . . ."; .25 "begin drafting. . ."; .75 "continue work . . ."; .25 "finalize and serve initial disclosures . . ."; 12/4/12 – .25 "receipt and review . . ."; 12/7/12– .50 "begin research . . ."; 12/11/12 –1.50 "continue extensive research . . ."; 12/12/12– .25 "strategy call . . ."; 12/1312–.25 "call with Ralph Ross"; .50 "begin work . . ."; 12/18/12– .50 "finalize . . ."; 1/16/13– .25 "call with Ralph Ross . . ."; .50 "finalize and send out . . ."; 3/1/13– 1.0 "receipt of and begin to review . . ."; 3/12/13– .25 "work with Kirby Blanchard . . ."; 3/14/13–.25 "emails with opposing counsel . . ."; .75 "prepare and review draft . . ."; 3/15/13– .25 "finalize and service . . ."; 3/18/13– .25 "meet with Kirby Blanchard . . ."; .25 "emails with client regarding . . ."; 4/3/13– .25 "lengthy call . . ."; 4/5/13–.50 "work with Joseph Briggett . . ."; 4/13/13–.25 "call with Ralph Ross. . ."; 4/18/13 – .75 "research issues  . . ."; 5/6/13– .75 "review and revise . . ."; 5/10/13– .25 "review motion to continue . . ."; 5/13/13 –.25 "work Joseph Briggett . . ."; .25 "review and revise draft . . ."; 5/15/13– .50 "receipt and review . . ."; 5/31/13– .50 "meet with client . . ."; 6/3/13– .25 "work with Joseph Briggett. . ."; 6/5/13– 1.00 "work with Joseph Briggett. . ."; 6/28/13– .25 "work with Joseph Briggett . . ."; .25 "receipt review and revise . . ."; 7/2/13– .25 "call with opposing counsel . . ."; .50 "review opposition . . ."; 7/3/13– .25 "review and revise . . ."; 7/5/13–1.25 "extensive work . . ."; 7/9/13–.75 "continue work on written discovery . . ."; 7/11/13– .25 "review scheduling order . . ."; 7/15/13–.25 "review discovery production. . . "; 9/4/13–.75 "work with Joseph Briggett. . .";

increments). Thus, due to the absence of billing judgment in the remaining entries, the Court finds that these entries will be reduced by fifteen percent. *Wells Fargo,* at *2; *see e.g., Walker v. U.S. Dept. of Housing and Urban Dev.,* 99 F.3d 761, 769-770 (5th Cir.1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment.").

After reducing the total number of hours for Peck, Briggett and Kaden by fifteen percent, the Court awards 43.4 hours for Peck, 200.4 hours for Briggett and 17.2 hours for Kaden. Adding these hours to those for the "reduced" amounts allotted to Peck, Briggett and Kaden's vague and block billed entries results in the following calculation:

| Billing Attorney | Hourly Rate | Category | Time | | Fee | |
|---|---|---|---|---|---|---|
| Peck | $285.00 | Vague | 3.6 | hours | $ | 1,026.00 |
| | | Block-Billed | 55.0 | hours | $ | 15,675.00 |
| | | Remaining | 43.4 | hours | $ | 12,369.00 |
| | | **Total:** | | | **$ 29,070.00** | |
| Briggett | $225.00 | Vague | 44.6 | hours | $ | 10,035.00 |
| | | Block-Billed | 60.2 | hours | $ | 13,545.00 |
| | | Remaining | 200.4 | hours | $ | 45,090.00 |
| | | **Total:** | | | **$ 68,670.00** | |
| Kaden | $260.00 | Vague[16] | 0.10 | hours | $ | 26.00 |
| | | Block-Billed[17] | 7.50 | hours | $ | 1,950.00 |
| | | Remaining[18] | 2.1 | hours | $ | 546.00 |
| | | **Total:** | | | **$ 2,522.00** | |

---

[16] As indicated above, Kaden's rate was $260.00 from the inception of this action through November 30, 2012, and was $250.00 per hour after December 1, 2012. Kaden's vague entries totaled 1.25 hours; 1.0 hours occurred after December 1, 2012, which were billed at $250.00 per hour; and .25 billed at a rate of $260.00 per hour. After reducing these entries by 50%, .50 hours of Kaden's entries are billed at $250.00, and .10 entries are billed at $260.00 per hour.

[17] As indicated above, Kaden's rate was $260.00 for 10.75 of the block billed entries. After reducing 10.75 by 30%, Kaden is awarded 7.5 hours for the entries billed at $260.00 per hour. Of the remaining 12.5 hours of entries which the Court found were block-billed, after reducing these entries by 30%, Kaden is awarded 8.8 hours for the entries billed at $250.00 per hour.

[18] As indicated above, Kaden's rate was $260.00 for 2.5 of the 20.25 hours which were categorized under "remaining" entries. After reducing this amount by 15%, Kaden is awarded 2.1 hours for the entries billed at $260.00. The remaining 17.75 hours were billed at $250.00 per hour. After reducing the remaining 17.75 hours by 15%, Kaden is awarded 15.1 hours for these entries at $250.00 per hour.

|         |              |      |       |    |          |
|---------|--------------|------|-------|----|----------|
| $250.00 | Vague        | 0.50 | hours | $  | 125.00   |
|         | Block-Billed | 8.80 | hours | $  | 2,200.00 |
|         | Remaining    | 15.1 | hours | $  | 3,775.00 |
|         | **Total:**   |      |       | **$** | **6,100.00** |

Therefore, the Court finds that adding $29,070.00 for Peck's entries, $68,670.00 for Briggett's entries, and $8,622.00 for Kaden's entries, Conmaco is entitled to a reasonable award of attorney's fees in the amount of **$106,362.00**, for the costs associated with the instant action.

### C.     Interest and Costs

In support of its Motion, Conmaco argues that it is entitled to an award of costs in the amount of $6,719.91 associated with the instant action. *See* R. Doc. 98-5, p. 10-11.[19] Although Conmaco's application requests $6,719.91, after an analysis of all documented costs submitted in Conmaco's supplemental billing invoices, the actual amount submitted is $6,720.45.[20] However, the Court will only award the amount requested by Conmaco's application. Therefore, the Court finds that an award of $6,719.91 in costs is appropriate.

### IV.    Conclusion

**IT IS RECOMMENDED** that Plaintiff, Conmaco / Rector L.P.'s, ("Conmaco") **Motion for**

---

[19]As per the May 6, 2014, Judgment issued by the District Judge in this matter, the determination of costs was referred to the undersigned for calculation and determination of the reasonableness of the attorney fees requested by Conmaco. *See* R. Doc. 97.

[20]In its application, Conmaco provided the following expenses: 9/21/12 – invoice for filing $350.00, *see* R. Doc. 98-3, p. 2; 11/1/12– $125.00 subpoena fees, *id.* at p. 4; 12/3/12– $4.54 Westlaw legal research, *id.* at p. 6; 1/4/13– $101.00 Westlaw research, *id.* at p. 7; 4/9/13– $140.87 Peck invoice, *id.* at p. 11; 4/15/13– $591.75 court reporter invoice, *id.* at p. 14; 5/2/13 – $27.53 Westlaw research, *id.*; 5/11/13– $22.50 Opus Legalis invoice, *id.* at p. 15; 6/3/13 – $323.77 Westlaw research, *id.* at p. 19; 6/25/13– $348.15 Alliance Reporting invoice, *id.;* 7/19/13 – $75.00 subpoena fees, *id.* at p. 24; 7/23/13– $75.00 process server fee, *id.* at p. 24; 8/5/13– $286.38 Westlaw research, *id.*; 9/14/13– $22.50 Opus Legalis invoice, *id.* at p. 27; 9/26/13– $126.56 Peck invoice for travel, *id.*; 10/2/13– $122.12 Westlaw research, *id.* at p. 31; 11/4/13– $137.91 Westlaw research, *id.* at p. 38; 11/16/13– $ 55.00 Opus Legalis invoice, *id.;* 9/11/13– $2,412.80, Hub City Reporters invoice for depositions, *id.* at p. 40; 12/3/13– $568.00 Westlaw research, *id.*; 11/12/13– $385.27 Choice Copy Service, Inc., *id.* p. 42;  1/03/14– $39.89 Westlaw research, *id.;* 2/03/14– $20.25 Westlaw research, *id.* at p. 43; 2/12/14– $358.66 Alliance Reporting Invoice, *id.;* totaling $6,720.45.

**Recovery of Attorney's Fees & Costs (R. Doc. 98)** be **GRANTED**, and that Conmaco be awarded reasonable attorney's fees in the amount of **$106,362.00**, and costs in the amount of **$6,719.91**, for a **total award of $113,081.91**, to be paid by Defendant, L&A Contracting Company ("LAC") **no later than twenty one (21) days** of the adoption of this Report and Recommendation by the District Judge.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[21]

New Orleans, Louisiana, this 11th day of July, 2014

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.